CARSWELL, trustee, *vs.* LOVETT *et al.*

1. In 1848, a testator died, leaving a will which contained the following items:

"After the death of my wife, Mary S., I give and bequeath all my estate, both real and personal, to the children of my stepson, Patrick B. Connelly, and those born and that may hereafter be born to him in wedlock. . .

"I direct that my executor shall, in parceling out that portion of my estate which shall be the share of his female children, . . hold the same in trust for the sole and separate use of such female child, and that in no event shall it be subject to the debts, liabilities or contracts of any husband to whom they shall be married, but that said female child shall have the use of said property during their natural lives, and at their death it is my wish that it be divided between her children and their representatives."

The trustee named in the will died. The husband of a granddaughter of the testator died in 1867. In 1869, upon the application of such granddaughter, a new trustee was appointed by the court.

*Held,* that the trustee was to hold the property only to protect it against the debts of the husband of the testator's granddaughter, and upon the death of her husband no duty remained for the trustee to perform; nor was there anything to be done which required him to retain the legal estate. He was not trustee for the remaindermen. Therefore, upon the death of the husband of the testator's granddaughter, the trust became executed, and the legal title vested in the wife during her life, with remainder to her children after her death; and the appointment of a trustee by the court was void.

2. It has been decided by this court in three cases that, where a trust

was created before the act of 1866, it was executed upon the passage of that act; and these decisions are not overruled.

(a) It is not decided whether or not the trustee had any vested right as to his commissions and the legal estate in him which the legislature could not divest.

January 9, 1888.

Trusts and trustees. Wills. Estates. Before Judge RONEY. Burke county. At chambers, October 26, 1887.

Reported in the decision.

R. W. CARSWELL and J. J. JONES, for plaintiff in error.

R. O. LOVETT, for defendants.

SIMMONS, Justice.

R. W. Carswell filed his bill in Burke superior court against Robert O. Lovett, administrator of Mary S. Taylor, Wilhelmina J. Steiner and Sarah C. Heyward, in which he alleged that, on the 9th of December, 1869, he was appointed trustee for Mary S. Taylor; that the trust estate then consisted of two thousand acres of land in Burke county, and certain personal property, mules, corn, fodder, farming utensils, household and kitchen furniture; that the personal property was the accumulation of the trust estate. Said plantation was bequeathed to Mary S. Taylor by her grandfather, Thomas Street, who died in the year 1848. By the 12th and 15th items of the will of Thomas Street, he gave the plantation to her for her own separate use and benefit, free from the debts, contracts and liabilites of her present or any future husband, and after her death to be divided among her children. He appointed her father, Patrick B. Connelly, as trustee of the same. He further alleges that the trustee had died, and that the trust estate was without a trustee until 1869, when he was appointed by the court on the application of the said Mary S. Taylor; that after he was appointed he

took charge and control of all the property of said trust estate, and managed, directed and controlled the same in person, for the use and benefit of his *cestui que trust*; that he managed said property during the years 1870, 1871, 1872, 1873 and 1874, and applied the income derived therefrom to the payment of the current expenses of said plantation, and the support and maintenance of the *cestui que trust;* that during these years he purchased and furnished to said trust estate three mules and one horse at a cost of $734, and an ox-cart and wagon at a cost of $190; built corn-cribs and laborers' houses, and repaired the dwelling at considerable expense; that he furnished the said Mary S. Taylor other large sums of money for the support of herself and her two daughters, who were at expensive boarding-schools, all of which advances for the benefit of the trust estate and for the support of Mrs. Taylor and her two daughters, with interest thereon, amounts to $2,400 or other large sum; that at the close of the year 1874, Mrs. Taylor determined to reside permanently on the plantation, and her daughter, Sarah C. Heyward, and James C. Heyward, the latter's husband, determined to reside with her; and the complainant turned over to said Mary S. Taylor the immediate management and control of said plantation and planting interests, which she continued to exercise until the time of her death in April, 1886; that at the time of her death, the personal property on said plantation consisted of two mules and wagons, carts, plantation tools, household and kitchen furniture, and certain rent notes which had been taken for rent of part of the plantation for the year 1886. This property, he alleges, was the accumulation from the income derived from said plantation, and is subject to the payment of the debts of said trust estate; and he claims it to be his duty as trustee to sell said property, and to collect said rent notes and apply the proceeds thereof to the payment of the just debts of said trust estate. He claims also the right to rent out said plantation until a sufficient amount

has been realized to pay said indebtedness, and then to turn over the real estate to the remaindermen, to-wit, Mrs. Steiner and Mrs. Heyward. He further alleges that Robert O. Lovett, under some pretended claim of right and authority, had claimed possession of certain rent notes and other personal property, and declared it his purpose to collect the notes, and refused to turn over said personal property to the complainant, who claims the legal right as trustee to control the same. He prays for an injunction to restrain said Lovett from the collection of said notes, and from interfering with the property of said trust estate, and for an order compelling said Lovett to deliver the same over to him that he might sell the same and collect the notes and apply the proceeds to the payment of his debt.

Lovett answered this bill, and set up in his answer that he had been appointed by the ordinary of Burke county temporary administrator on the estate of Mary S. Taylor, and as administrator had made an inventory or apprais-ment of the personal property belonging to the said es-tate; he admitted that he had the property set out in the bill in his possession, and claimed to hold it as such ad-ministrator. He also alleged that the complainant, as trustee, was not entitled to interfere with his administra-tion; that said trust which is set up in said bill had long since been executed, and the legal title to said land had been in Mary S. Taylor since the year 1866, with remainder over to her children; and that if the complainant had any demand against his *cestui que trust*, the said Mary S. Tay-lor, the cause of action thereon accrued in 1874, and the same was barred by the statute of limitations.

Mrs. Steiner and Mrs. Heyward filed their joint answer, in which they admitted that it was true that, by the will of their grandfather, Thomas Street, the land described in the bill was given in trust to their mother during her life, but they deny that they ever were beneficiaries of said trust estate, but on the contrary, asserted that said trust

estate by its terms ceased at the death of Mary S. Taylor, and said land after her death passed to them in fee-simple. They also alleged that, although said trust estate was created for the benefit of said Mary S. Taylor, the same did not so continue, but that by the act of 1866, the trust was executed, and the legal as well as the equitable title to said property united in said Mary S. Taylor, and she became absolute owner of said property during her life; also that her husband, Ira Taylor, died in 1867; and that though the said Carswell may have been, by order of the chancellor in 1869, appointed as trustee of said property, said order had no force or authority to convert the legal title at that time held by Mary S. Taylor into a beneficial or trust estate; that upon the death of the husband of Mary S. Taylor, the trust became executed, and no other trustee was necessary to manage or control said property; that therefore the personal property upon said plantation, at the time of the death of their mother, belonged to her, and now rightly belongs to her legally appointed administrator. They also claim that if the trust was not executed upon the passage of the act of 1866, or at the death of their father, Ira J. Taylor, it was executed when they became of age; that they became of age in 1872 and 1876. They deny the indebtedness set up by Carswell against the estate, and claim that if he has any debt, it is not against them, but against their mother individually, and is barred by the statute of limitations.

The twelfth and fifteenth items of the will of Thomas Street, as far as concern this property, read as follows:

12th. "After the death of my wife, Mary S., I give and bequeath all my estate, both real and personal, to the children of my stepson, Patrick B. Connelly, and those born and that may hereafter be born to him in wedlock. . . . . .

15th. "I direct that my executor shall, in parceling out that portion of my estate which shall be the share of his female children, . . hold the same in trust for the sole and separate use of said female child, and that in no event shall it be subject to the debts, liabilities or contracts of any husband to whom they shall be married, but that said female child shall have the use of said property during their

natural lives, and at their death it is my wish that it be divided between her children and their representatives."

Upon the hearing of this case by the chancellor, upon the bill and the answers thereto, he refused the injunction prayed for. The complainant excepted, and brings the case here for review. The main question argued before us was, whether at the time Carswell was appointed trustee by the judge of the superior court, the trust had become executed. If the trust was executed at that time, there was no necessity for the appointment of a trustee. If the trust had served its purpose and was executed, the legal title merged immediately into the equitable interest, and the perfect title vested in her according to the terms and limitations of the trust. If it was executed, she was capable of taking and managing her own property, and there was no necessity for the appointment of a trustee, and the order of the court appointing him was void and of no effect, although Mrs. Taylor may have applied for his appointment and consented thereto.

1. Was the trust executed in the year 1869, when Carswell was appointed by the court? It will be observed that this trust in the will of Street was for the purpose of protecting this property against the debts and liabilities and contracts of her husband. Her husband died in 1867. Upon his death the reason for the trust ceased. There was nothing left for the trustee to do. As he was to hold it only to protect it against the debts of the husband, the husband being dead there was no other duty which the trustee could perform. Everything had been done by the trustee necessary to secure the property; there was nothing more he could do to render certain the interest of the beneficiaries. There was no conveyance for him to make to Mrs. Taylor or to her children. There was no order of court for him to obtain, to divide the property. He could do nothing to ascertain the objects of the trust, for they were plain and distinct. There was no specified mode of distribution in the will creating the trust, nor was there

any other act which required the trustee to retain the legal estate in him.    He was not trustee for the remaindermen. We therefore think that this trust became executed on the death of the husband in 1867, and that the legal title went into the wife during her life, and then to her children after her death; and the appointment of a trustee by the court was void and of no effect.    Code, §2313; *Liptrot vs. Holmes*, 1 *Kelly*, 381; *Jordan vs. Thornton*, 7 *Ga.* 517; *Coughlin et al. vs. Seago*, 53 *Ga.* 250 ; *Churchill vs. Corker*, 25 *Ga.* 479; *Banks vs. Sloat, Bussell & Co.*, 69 *Ga.* 330. As to remaindermen, see *Russell vs. Kearney*, 27 *Ga.* 96; *Mathews vs. Paradise*, 74 *Ga.* 523.

.  2. It was insisted by the defendants in error also that if this trust was not executed upon the death of the husband, it was executed by the act of 1866, commonly known as " the woman's law."    Counsel for the plaintiff in error contended that that act could not have this effect, because the trustee was an officer of the law, and as such officer had a vested right in his commissions as trustee, and had the legal estate in him, and the legislature had no power to divest him of these vested rights.    Whether this proposition be sound or not, we do not now decide.    It is sufficient for us to say upon this point, that this court has in four cases decided that where a trust was created before the act of 1866, the trust was executed upon the passage of that act.    These cases were decided by a unanimous court, and we do not feel constrained to overrule them, even if we felt so disposed.    See *Banks vs. Sloat, Bussell & Co.*, 69 *Ga.* 330; *Knorr, administrator, vs. Raymond*, 73 *Ga.* 749 ; *Kile, trustee, vs. Fleming* ; and *Harrold, Johnson & Co. vs. Westbrook*, decided at October term, 1886, of this court, 78 *Ga.* 1, 5.

Judgment affirmed.