JOHN P. CANTOU,

*Plaintiff and Appellant,*

v.

CARL WALKER,

*Defendant and Respondent.*

(No. 2309; Jan. 2, 1945; 154 P. 2d 530)

For the plaintiff and appellant the cause was submitted on the brief of W. M. Haight, of Riverton, Wyoming.

For the defendant and respondent the cause was submitted on the brief of G. W. Bremer, of Worland, Wyoming.

## OPINION

RINER, Justice.

This was an action for alleged trespass by sheep owned by Carl Walker, upon lands situated in Hot Springs County, Wyoming, the title to which John P. Cantou claimed, the latter as plaintiff in the District Court of said County and appellant here, having instituted the litigation against Walker, the defendant below and now the respondent.

Plaintiff filed his petition May 27, 1943, in the Court aforesaid. In substance it stated that he has been and is now the owner since on or before August 20, 1935, and entitled to the possession of Lots 4, 5 and 8 of Section 15, and Tracts 37K, 37L, 37M and 37P, in Township 43 North, Range 91 West of the 6th P. M; that these lands are good grazing lands with considerable feed and grass thereon; that this feed has been destroyed and used by the defendant's sheep which have also trampled and cut up the soil to its permanent injury; that on or about the date aforesaid and since then the defendant has continuously entered upon said lands and caused them to be depastured by said sheep, causing the grass and growing grain to be trodden down and injured. Damages were asked in a specific sum and that defendant be enjoined and restrained from permitting or causing his sheep to enter upon these lands.

The defendant in his answer alleged substantially that at the time of the commencement of this action and long prior thereto, and at all times since, the de-

fendant was and is the owner and entitled to the possession of all the tracts of land described in the plaintiff's petition containing 162.03 acres, a little more or less. As to Lots 4, 5 and 8, the answer makes no statement. It does, however, allege that said tracts are described in the Original Government Survey as the SW¼NE¼, SE¼NE¼, NE¼SE¼, and SE¼SE¼ of said Section 15; that attached to said answer and incorporated therein by reference is a map showing correctly the location and area of these subdivisions of Section 15. Defendant denied each allegation of plaintiff's pleading not specifically admitted, qualified or denied. The answer prayed that plaintiff take nothing by his action.

Plaintiff filed a reply amounting to a general denial of the new matter set out in this answer.

The cause was tried before the Court without a jury April 5, 1944, with the result that a judgment was entered in plaintiff's favor for nominal damages in the sum of One Dollar, each party was ordered to pay his own costs and the injunction sought by plaintiff was denied. The Court found preliminary to ordering said judgment that defendant had committed a technical trespass upon Lots 4, 5 and 8; that there was no proof of damage and that it would be an injustice to grant plaintiff an injunction.

On the trial to sustain their respective claims to ownership and possession of the real property above mentioned certain proofs were submitted. The plaintiff offered in evidence a United States Government patent to lands which were described therein as:

"west half of the southwest quarter of Section fourteen, the Lots four, five, and eight of Section fifteen, the north half of the northwest quarter of Section twenty-three, and the Tracts thirty-seven "K", thirty-seven "L", thirty-seven "M", and thirty-seven "P" in

Township forty-three north of Range ninety-one west of the Sixth Principal Meridian, Wyoming, containing three hundred thirty-four acres and twenty-seven hundredths of an acre, * * *";

this instrument was received without objection. The Court also received in evidence without objection and on behalf of the plaintiff a plat from the United States Land Office, same being a plat of the resurvey of Township 43 North, Range 91 West, in connection with testimony given by a licensed surveyor as to the acreage of the aforesaid tracts and lots and that this acreage was described on the plat in those terms only.

The defendant offered in evidence a copy of a decree for the specific performance of an agreement to convey certain lands in a suit determined in the District Court of Fremont County, Wyoming, wherein Carl Walker, the defendant below in the case at bar, was plaintiff and John P. Cantou, plaintiff in the present litigation, was defendant. This copy was duly certified by the Clerk of that Court and had been recorded in the office of the County Clerk of Hot Springs County, February 24, 1942. The decree aforesaid was dated February 17, 1942, and entered Nunc Pro Tunc as of February 14, 1941. Plaintiff Cantou objected to the reception in evidence of this decree as "incompetent, irrelevant and immaterial" but the objection was overruled. The record does not show that plaintiff reserved his objection to this ruling.

This decree, briefly summarized, recites that upon motion made by Walker's counsel the Court gave judgment in his favor upon the pleadings of the parties and an original judgment and decree was made and entered March 10, 1941, setting out that fact and directing that Cantou convey to Walker by warranty deed the following real property, to-wit:

"S½NE¼, E½SE¼ Section 15; W½SW¼ Section

14; NW¼, E½SW¼, W½SE¼, SW¼NE¼, SE¼-SE¼, Section 23, Township 43 North, Range 91 West, 6th Principal Meridian, Hot Springs County, Wyoming, together with the appurtenaces thereunto belonging:";

that the original decree directed that defendant Cantou make this conveyance "within ten days from the date of service upon him or upon his attorney of record of notice of the entry" of said original judgment and that in the event of Cantou's failure to do this:

"that then and in that event the judgment and decree then made should be taken and considered for all purposes as a conveyance and transfer of the title to said above described lands from the defendant, John P. Cantou unto the plaintiff, Carl Walker; and that a certified copy of said judgment and decree might be taken and considered and filed for record in any jurisdiction deemed necessary or expedient by the said Carl Walker as evidence of and evidencing the transfer of title to said lands as aforesaid, * * *".

The decree further recited that the time fixed for making conveyance had elapsed and the defendant had failed to comply with the judgment of the Court and it was consequently further adjudged that:

" * * * this judgment and decree be and the same is hereby constituted as an instrument of conveyance from the defendant to the plaintiff for all of the lands and premises herein above described; and that a certified copy of this judgment and decree may be used and filed for record in any and all jurisdictions as a full and complete conveyance of such title and evidence of the same."

In connection with this decree there was submitted on the defendant Walker's behalf the testimony of the County Surveyor of Washakie County, that the description of the lands in the decree for specific performance summarized as above, to-wit: S½NE¼ and the E½SE¼ of Section 15 aforesaid was the same

land as was described in the United States patent with other lands and on the United States Land Office plat already mentioned as Tracts 37K, 37L, 37M, and 37P.

The first contention made on behalf of the appellant herein is that the Court erred in receiving in evidence the decree for specific performance hereinbefore outlined. The reasons urged for this claim are that the action was an action in personam and not in rem, and that while said decree would constitute a conveyance of the property described "in a county within the jurisdiction of the Court entering the decree"—and by this we suppose counsel intends Fremont County or at most a County within the Seventh Judicial District—it could not be operative in Hot Springs County, which is situated in the Fifth Judicial District. This is a decidedly strange view of the law, to say the least.

Upon the situation disclosed by the record and already mentioned we might very well decline to consider the point at all as no exception was reserved to the ruling admitting the decree in evidence.

But we feel that we should make it clear that the contention is quite without merit. No authorities in point are cited. Those to which our attention is directed (5 Thompson on Real Property, 4346; Fall v. Fall, 75 Nebr. 104, 113 N. W. 175) have to do with an entirely different situation than is here presented, i. e., those authorities discuss the operation of a decree for specific performance concerning lands located without the state where the decree was passed. An entirely different legal principle is thus involved, viz., the well-known rule that ordinarily state laws and court decrees and judgments in personam have no operative effect without the territorial limits of the state.

Counsel have evidently overlooked Section 89-703, W. R. S. 1931, which reads:

"An action to compel the specific performance of a contract of sale of real estate may be brought in the county where the defendants, or any of them, reside."

If the contention urged were to be sustained this section of our state law which has been operative for decades and which was borrowed from the State of Ohio would be rendered quite ineffective. In the specific performance case here in question Walker properly sued Cantou in the County of the latter's residence, i. e., Fremont, and obtained the decree aforesaid against him. The land involved is located in Hot Springs County. But the view insisted upon would make this decree utterly valueless although both parties had their day in Court to fully litigate the matter in a forum obviously the most convenient for the defendant, Cantou.

Additionally, Section 89-2211, W.R.S. 1931, provides.

"When the party against whom a judgment for a conveyance, release or acquittance is rendered does not comply therewith by the time appointed, such judgment shall have the same operation and effect, and be as available as if the conveyance, release or acquittance had been executed conformably to such judgment."

That is to say, by virtue of our state law a decree of specific performance operates and has the same effect when a party fails to obey it within the time fixed for compliance therewith as a deed to the property itself. That, of course, intends that it can be recorded as was here done in the County where the land was situated and is just as effective as a deed from the party himself would be in accomplishing a transfer of title. This is familiar law, and we need mention only the case of Banks v. Sloat, Bussel & Co., 69 Ga. 330, where the decree of specific performance was obtained in one County and was recorded in another where the lands

were located. The second headnote of the case reads: "A decree for specific performance upon a bill to recover the title to land may be recorded in the county where the land lies, and operates as a deed without the actual execution of a conveyance between the parties. The making of such a conveyance is superfluous."

The second contention made for appellant is that this specific performance decree rendered in Fremont County between these parties is void because it does not correctly describe the lands owned by Cantou and does not give the correct acreage. Again no authorities are cited in support of this position and we are obliged to hold it untenable.

The County Surveyor of Washakie County, Mr. Donnell, as hereinbefore mentioned, has testified that Tracts 37K and 37L, under the resurvey as shown by the United States Land Office plat aforesaid, were the same lands as the S½ of the NE¼ of said Section 15, under the original survey, and, also that Tracts 37M and 37P, under the resurvey as disclosed on said plat, were the same lands as the E½ of SE¼ of said Section 15. The Court could very properly believe this witness as a man educated in the art of surveying. It is complained, however, that Donnell should not have been permitted to give this testimony simply because the Land Office plat aforesaid designated the lands with a nomenclature different from that appearing on the original survey. We see nothing in this claim. If the lands were the same though designated otherwise on different surveys and in the decree for specific performance involved, no reason is perceived why such testimony should not have been received.

Treating that decree, as we must, as a deed or conveyance of the lands described therein, their identity with the indicated lands described on the plat aforesaid and here involved may here be shown through the

testimony of a qualified witness. Both 18 C. J. 431, and 26 C. J. S. 392, say that:

"The evidence of educated and experienced engineers, who have examined all the records and obtained all the information possible, and upon this information have located certain monuments and landmarks, finding them to correspond with the controlling plat, is competent to show that the land in dispute is a part of a lot designated by the plat; and, when extrinsic evidence has been admitted to aid a description, the court will exhaust all means of ascertaining the meaning and application of the instrument."

See also 22 C. J. 1261, Note 11, and cases cited; 32 C. J. S. 1014-5, Section 1007a.

In Stewart v. Chadwick, 8 Ia. 463, the third syllabus of the case reads:

"Where a tract of land is described in different modes by different instruments, parol evidence is admissible to show that the different descriptions embrace the same tract of land."

And 22 C. J. 1273, § 1691, says that:

"Where different instruments relating to property describe it in a different manner, it may be shown by parol that such different descriptions relate to the same piece of property, if they are not absolutely repugnant."

Finally, it is insisted for appellant that there is prejudicial error in the record because the Court awarded only One Dollar damages to plaintiff for a naked trespass upon Lots 4, 5 and 8, above mentioned, and pleaded in plaintiff's petition as owned by him and such ownership not disputed by defendant's answer. These lots embraced only a little over 12 acres. There is not a scintilla of evidence that any damage to the land included in these lots was caused by defendant's sheep or that the grass and herbage was injured or depastured by them, or even that there was any feed of any kind for stock on said lots. For aught that the

record shows the land may have been utterly devoid of any pasturage worth considering at all as frequently happens to be the case with portions of certain range lands varying in extent.

That the plaintiff was entitled as of right to a permanent injunction to restrain defendant Walker from again trespassing with his sheep upon said land is also urged, but there is no record proof that the defendant was committing repeated trespasses or that he was willfully and intentionally putting his sheep upon these lands, or that said lands were at all fenced, or that plaintiff had warned the defendant to keep his sheep off this property, or that Walker was threatening continually to use said lands for the benefit of his animals. The proof is that these lots adjoined a road and it may be the sheep had strayed off the road or from the adjoining land owned by Walker. Mr. Cantou testified merely that he saw sheep owned by Walker on Lots 4, 5 and 8, about the first week in May, 1943. Plaintiff's witness, Voss, stated that he saw Mr. Walker with his sheep on land "described as Mr. Cantou's". Whether he saw them on Lots 4, 5 and 8, aforesaid, is not proven.

At any rate, we may not overlook that in Healy v. Smith, 14 Wyo. 263, 83 Pac. 583, Mr. Chief Justice Potter, had occasion to say, in a sheep trespass case where the District Court had made a temporary restraining order perpetual in its final judgment and this Court ordered the dissolution thereof that:

"Injunction is a strong and powerful remedy; for its violation parties may be punished as for contempt upon summary proceedings. It should not, therefore, be granted merely to protect a right where no actual or threatened violation of that right appears. Mr. High says: 'Nor will a court of equity lend its aid by injunction for the enforcement of right or the prevention of wrong in the abstract, and unconnected with

any injury or damage to the person seeking relief.' (High on Inj. (3rd Ed.), Sec. 1.) And again, 'An injunction, being the strong arm of equity, should never be granted except in a clear case of irreparable injury, and with a full conviction on the part of the court of its urgent necessity. To justify the court in granting the relief, it must be reasonably satisfied that there is an actual intention on the part of the defendant to do the act which it is sought to enjoin, or that there is probable ground for believing that, unless the relief is granted, the act will be done. And it is not a sufficient ground for interfering that, if there be no such intention on the part of defendant, the injunction can do no harm. Nor will the court interfere when the evidence shows that there is no probability of defendant doing the act which it is sought to restrain.' (Id., Sec. 22.)"

Enumerating the general principles and considerations governing the issuance of injunction, 28 Am. Juris. 217, Section 24, relying on many authorities, says that:

"The extraordinary character of the injunction remedy and the danger that its use in improper cases may result in serious loss or inconvenience to an innocent party requires that the power to issue it should not be lightly indulged in, but should be exercised sparingly and cautiously, only after thoughtful deliberation, and with a full conviction on the part of the court of its urgent necessity. In other words, the relief should be awarded only in clear cases, reasonably free from doubt, and, when necessary, to prevent great and irreparable injury. The court should therefore be guided by the fact that the burden of proof rests upon the complainant to establish the material allegations entitling him to relief."

Upon a careful review of this record we are convinced that the judgment of the District Court of Hot Springs County was right and that it should be affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.